UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE SHAHBAZIAN FAMILY TRUST,

Plaintiff,

v.

DENNIS O'NEIL, et al.,

Defendants.

CASE NO. C16-5477 BHS

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION
TO CONTINUE AND MOTION
FOR LEAVE TO AMEND

This matter comes before the Court on (1) the motion for summary judgment of Defendants Ocean Shores Real Estate, Inc., Steven L. Simmons, and "Jane Doe Simmons" (collectively "Broker Defendants") (Dkt. 32); (2) the motion for summary judgment of Defendants Carol and Dennis O'Neil (collectively "O'Neil Defendants") (Dkt. 51); (3) the motion to continue of Plaintiff the Shahbazian Family Trust ("Plaintiff") (Dkt. 36); and (4) Plaintiff's motion to amend (Dkt. 49). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby finds and rules as follows:

# I.  PROCEDURAL HISTORY

On June 14, 2016, Plaintiff filed its complaint in this action, asserting claims of fraud, negligent misrepresentation, and unjust enrichment against the O'Neil Defendants and the Broker Defendants (collectively "Defendants"). Dkt. 1. Plaintiff also asserts a claim against the O'Neil Defendants for breach of contract. *Id.*

On March 16, 2017, Plaintiff moved to substitute counsel. Dkt. 26. The Court granted the motion. Dkt. 27.

On May 4, 2017, the Broker Defendants moved for summary judgment on Plaintiff's claims. Dkt. 32. On May 11, 2017, Plaintiff moved to continue the summary judgment motion pending further discovery. Dkt. 36. On May 22, 2017, the Broker Defendants responded to the motion to continue. Dkt. 36. The same day, Plaintiff responded to the Broker Defendant's motion for summary judgment. Dkt. 43. On May 25, 2017, the Broker Defendants replied. Dkt. 47.

On June 1, 2017, Plaintiff moved for leave to file an amended complaint. Dkt. 49. Also on June 1, 2017, the O'Neil Defendants moved for summary judgment on Plaintiff's claims. Dkt. 51. On June 12, 2017, Defendants responded to Plaintiff's motion for leave to amend. Dkts. 56, 60. On June 16, 2017, Plaintiff replied. Dkt. 62.

On June 19, 2017, Plaintiff responded to the O'Neil Defendant's motion for summary judgment. Dkt. 63. On June 23, 2017, the O'Neil Defendants replied. Dkt. 66.

## II.    FACTUAL BACKGROUND

This case involves a dispute over the Plaintiff's purchase of vacant oceanfront property located at 870–876 Mt. St. Helen's Loop, Ocean Shores, Washington 98569, from the O'Neil Defendants.

In 2013, Mr. Hossein Shahbazian ("Shahbazian") wanted to retire and move to the Pacific Northwest and planned to purchase, through the plaintiff family trust, a property near the Washington coast to build a new home. Dkt. 44 at 2. Shahbazian did not intend to build a home immediately. Dkt. 52-1 at 27–28. While visiting Ocean Shores, Shahbazian found and visited the subject property which was listed for sale. Dkt. 44 at 2.

When visiting the property, Shahbazian spoke with a neighbor who put him in contact with the O'Neil Defendants. Dkt. 52-1 at 18–19. Shahbazian spoke with the O'Neil Defendants on the phone saying that he liked the property and would like to place an offer of $150,000 on it. *Id.* at 21, 26. The O'Neil Defendants directed Shahbazian to their real estate agent, Mr. Steven Simmons ("Simmons"), who Shahbazian then contacted by phone. *Id.* at 21.

On July 16, 2013, Plaintiff and the O'Neil Defendants executed a purchase and sale agreement, including addenda, for the property. Dkt. 33-1 at 18–31. The Broker Defendants acted as a listing broker and represented both the O'Neil Defendants and Plaintiff. *Id.* at 18. As provided in the purchase and sale agreement, Plaintiff purchased the property for a total of $150,000, including a $30,000 down payment and the remainder to be paid to the O'Neil Defendants in monthly mortgage installments with interest. *Id.* at 28.

The purchase and sale agreement incorporated a "form 17" seller disclosure statement, Dkt. 33-1 at 23, which had been previously executed in April of 2012, Dkt. 33-2 at 2–6. The form 17 disclosure indicated that (1) the O'Neil Defendants did not know whether the property was located in a flood zone, (2) the property had suffered material damage from "fire, wind, floods, *beach movements*, earthquake, expansive soils, or landslides," (3) and that the O'Neil Defendants had previously submitted a permit application to construct a bulkhead. Dkt. 33-2 at 4–5 (emphasis added). Plaintiff acknowledged receipt of the form 17 disclosure at the time the purchase and sale agreement was executed on July 16, 2017. Dkt. 33-2 at 6.

At some unspecified point, the O'Neil Defendants provided Shahbazian with an old publicly recorded map of the neighborhood showing the shoreline as being located east of the property's eastern border. Dkt. 44 at 3, 7. However, in reality, erosion had moved the shoreline so that it was located to the west of the property's eastern border. Also, at the time of sale, Simmons had in his possession aerial photography showing the shoreline's current position relative to the property's boundaries and noting applicable setbacks and a flood zone designation. *Id.* at 41. Simmons did not provide this aerial photograph or otherwise disclose this information to Shahbazian. *Id.* at 3.

The sale of the property to Plaintiff closed in August of 2013. Dkt. 52-1 at 38. Shahbazian did not conduct any investigation of the property or its conditions prior to closing other than his initial visit to the property prior to making an offer.

In the summer of 2015, Plaintiff was somehow placed on notice that the property might be subject to building restrictions. Dkt. 52-6. Shahbazian then investigated the

condition by visiting the City of Ocean Shores' office and requesting information about the property. Dkt. 52-1 at 38–42. The city office produced records showing the current setbacks, flood zone designation, and the shoreline erosion history. *Id.* at 41–42.

In August of 2015, Plaintiff ceased making mortgage payments on the property, Dkt. 52-1 at 50, and Shahbazian informed the O'Neil Defendants that he would like to rescind the purchase of the property, *see* Dkt. 52-6. On August 27, 2015, Shahbazian again contacted the O'Neil Defendants by email to discuss "unwinding the deal." *Id.* at 2–3. On September 14, 2015, Shahbazian sent a follow-up email stating that he wanted to "unwind the deal" because of setback issues and because "[a] good portion of the two lots were washed away before [he] purchased them . . . and this was not disclosed." *Id.* at 2.

In response to Plaintiff's cessation of mortgage payments, the O'Neil Defendants commenced non-judicial foreclosure proceedings on the property. *See* Dkt. 11. A trustee's sale was eventually scheduled for July 29, 2016. *Id.* at 2. After this action was commenced, Plaintiff and the O'Neil Defendants entered a stipulation staying the trustee's sale pending the final resolution of this case. *Id.*

## III.    DISCUSSION

**A.    Motion to Continue**

On May 11, 2017, Plaintiff moved to continue summary judgment proceedings pursuant to Rule 56(d) pending the review of recently disclosed documents and a deposition of Simmons. Dkt. 36. A party may seek to continue summary judgment proceedings in order to conduct additional discovery by showing "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2)

that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). *See also* Fed. R. Civ. P. 56(d). Since requesting the continuance, Plaintiff has had the opportunity to review the recently disclosed documents, depose Simmons, and rely on Simmons's deposition in its response to summary judgment. *See* Dkts. 43, 46. Therefore, it appears that the motion to continue is moot. More importantly, despite requesting additional time to depose a witness, Plaintiff failed to identify any particular facts that it needed additional time to discover, that would be essential to resisting the summary judgment motion that it seeks to continue. *See* Dkt. 36. Accordingly, the Court denies the motion to continue.

**B.      Summary Judgment**

　　**1.      Standard**

　　　　Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must construe any factual issues of controversy in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### 2.   Summary Judgment Motion by O'Neil Defendants

The O'Neil Defendants move for summary judgment on Plaintiff's claims against them for negligent misrepresentation and fraud. Dkt. 51. The O'Neil Defendants argue that they are entitled to judgment as a matter of law because (1) Plaintiff cannot show that the O'Neil Defendants made any false representations; (2) Plaintiff cannot show that it acted reasonably in relying, or had a right to rely, upon the allegedly false representations; (3) the Court lacks subject matter jurisdiction over this matter because the amount in controversy does not exceed $75,000; and (4) Plaintiff lacks standing or is not the real party in interest.

### a.   Absence of a False Representation

The O'Neil Defendants move for summary judgment against Plaintiff's fraud and negligent misrepresentation claims on the basis that they did not make any false representations to Plaintiff. Dkt. 51 at 9–11.

The elements of both fraud and negligent misrepresentation claims require that the defendant make a false representation to the plaintiff. *Adams v. King Cty.*, 164 Wn.2d 640, 662 (2008) (quoting *Stiley v. Block*, 130 Wn.2d 486, 505 (1996) ("The elements of

the fraud include: (1) representation of an existing fact . . . (3) falsity . . . ."); *Ross v. Kirner*, 162 Wn.2d 493, 499 (2007) ("A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that . . . the defendant supplied information for the guidance of others in their business transactions that was false . . . ."). Generally, "[a]n omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." *Austin v. Ettl*, 171 Wn. App. 82, 88 (2012) (quoting *Ross*, 162 Wn.2d at 499). For an omission to constitute negligent misrepresentation, a party must also have a duty to disclose the omitted information. *Van Dinter v. Orr*, 157 Wn.2d 329, 333 (2006) ("If a party has a duty to disclose information, the failure to do so can constitute negligent misrepresentation.").

Plaintiff's complaint attributes two false statements to the O'Neil Defendants. First, Plaintiff claims that the O'Neil Defendants stated that the subject property consisted of 0.47 usable acres. Dkt. 11 at 3. Second, Plaintiff claims that the O'Neil Defendants represented that the property was not located in a flood zone. *Id.*

Despite Plaintiff's assertions in his complaint, he has failed to produce any evidence indicating that the O'Neil Defendants made the above-described representations. In fact, Plaintiff's own deposition testimony reveals that the O'Neil Defendants never made any such statements:

> **Q:** So no one told you the size of the lot?
> **A:** Absolutely not. Even it's not in the contract.
> **Q:** And what about whether the property was under water?
> **A:** Nobody told me that.
> **Q:** Did you ever talk with Mr. and Mrs. O'Neil or Ocean Shores broker—

**A:** Yes, I have. I contact them, and even one of the letter responded. The Ocean Shores said that it's only bushes in the back. It's a normal lot size by the water. That's how they are. That was their response from the broker house.

**Q:** And let me finish the question on this just to make sure I'm conveying it fully. So did you ever talk with Mr. and Mrs. O'Neil or the agents about where the property line on the waterside was located?

**A:** Never did. I only—I never even meet Mr. O'Neil. The only conversation I had with him—I talked with the neighbor, then he knew him. . . . So that was our only conversation. I said, "Hi. How are you, Mr. O'Neil?" And that was the extent of that.

\* \* \*

**Q:** So the other allegation in the complaint I would like to discuss, 2.5 and 2.7. And what these statements say is that Mr. and Mrs. O'Neil and the Ocean Shores agent defendants represented that the property was not in a flood zone.

**A:** We never got to the flood zone. I find out myself it was in the flood zone, not because—if they would have—they put on there—even in statement of the information, they didn't put it clearly.

Dkt. 52 at 12–14. Additionally, in the seller disclosure statement, the O'Neil Defendants specifically informed Plaintiff that they did not know whether the property was located in a flood zone. Dkt. 33-2 at 4.

Plaintiff argues that the O'Neil Defendants are liable for false representations that they provided to third party intermediaries, such as a sales agent, that subsequently reached Plaintiff, notwithstanding the fact that the O'Neil Defendants never directly communicated any misrepresentations to Plaintiff. *See* Dkt. 63 at 6–8. Plaintiff fails to cite any authority for this proposition. *Id.*[1] More importantly though, even if the Court accepted Plaintiff's argument as a proper statement of the law without any supporting

---

[1] While Plaintiff has failed to support this argument with any legal authority or evidence, it should nonetheless be noted that the purchase and sale agreement states that Plaintiff and the O'Neil Defendants agree that "all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Broker." Dkt. 33-1 at 22.

authority, Plaintiff still fails to produce evidence to create a genuine dispute of whether the O'Neil Defendants ever supplied a misrepresentation to a third party intermediary.

To support its position that the O'Neil Defendants supplied false information to a third party intermediary, Plaintiff points to a MLS listing and a broker's real estate blog representing that the subject property included "side-by-side buildable lots" totaling 0.47 acres. Dkt. 63 at 7–8. *See also* Dkt. 64 at 6–7, 13–14. However, Plaintiff has failed to illustrate how the information in the MLS listing or real estate blog was false. There is nothing on the record to suggest that the lots do not include 0.47 acres as described. Moreover, the only evidence regarding "buildability" is that construction on the lots may require the use of pylons. *See* Dkt. 51-2 at 41. Although Plaintiff attempts to construe the information in the MLS listing and real estate blog as misrepresentations regarding the "dry lot size," *see* Dkt. 63 at 8, such a reference to "dry lot size" is nowhere to be found in the listing or blog. *See* Dkt. 64 at 6–7, 13–14.

Plaintiff has failed to produce evidence that the O'Neil Defendants made any false representations or withheld information that they had a duty to disclose. Accordingly, its claims against the O'Neil Defendants for fraud and negligent misrepresentation must fail.

### b. Absence of Reasonable Reliance or Right to Rely

The O'Neil Defendants also argue that they are entitled to summary judgment because it would be unreasonable for Plaintiff to rely on the alleged misrepresentations. "[T]o prevail on a claim of negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that he or she justifiably relied on the information that the defendant negligently supplied." *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536,

545 (2002). Likewise, "[i]n a fraud claim, the plaintiffs must establish that they had a right to rely on the representation." *Jackowski v. Borchelt*, 174 Wn.2d 720, 738 (2012). A real estate buyer is not justified in relying on a negligent misrepresentation claim if the seller disclosed any potential encumbrances and the buyer failed to exercise due diligence after receiving the disclosure. *Austin*, 171 Wn. App. at 91 ("[W]hen a seller discloses potential encumbrances as required by statute, a buyer is not justified in failing to exercise due diligence after receiving the disclosure."). Similarly, "[t]he 'right to rely' element of fraud is intrinsically linked to the duty of the one to whom the representations are made to exercise diligence with regard to those representations." *Alejandre v. Bull*, 159 Wn.2d 674, 690 (2007).

The record shows that Plaintiff failed to exercise due diligence by investigating the potential encumbrances that were set forth in the O'Neil Defendants' form 17 disclosures. In their disclosures, the O'Neil Defendants clearly stated that (1) they did not know whether the property was located in a flood zone, (2) the property had suffered material damage from "fire, wind, floods, *beach movements*, earthquake, expansive soils, or landslides," (3) and that the O'Neil Defendants had previously submitted a permit application to construct a bulkhead. Dkt. 33-2 at 4–5. Additionally, the purchase and sale agreement clearly sets forth the following terms:

> It is Buyer's responsibility to verify before the Feasibility Contingency
> Expiration Date . . . whether or not the property can be platted, developed,
> and/or built on (now or in the future) and what it will cost to do this.
> BUYER SHOULD NOT RELY ON ANY ORAL STATEMENTS
> concerning this made by the Seller, Listing Broker or Selling Broker. Buyer
> should inquire at the city or county, and water, sewer or other special
> districts in which the property is located. Buyer's inquiry should include,

but not be limited to: . . . any special building requirements, including setbacks . . . [and] whether the Property is affected by a flood zone . . . .

* * *

Buyer shall have 10 days after mutual acceptance to verify all information provided from Seller or Listing Firm related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 10 days of mutual acceptance.

Dkt. 33-1 at 22 (emphasis in original). Additionally, an addendum to the purchase and sale agreement refutes any prior representations on the accuracy of the represented lot size while clarifying that all measurements are "based solely on the County Assessors Records, which are not guaranteed to be either correct or accurate." *Id.* at 23. The addendum also expressly incorporates the form 17 disclosure statement while stating that "Buyer should not solely rely upon the Seller Real Property Disclosure Statement (NWMLS For 17 or 17C) as a substitute for an inspection . . . ." *Id.*

Despite Plaintiff's burden to exercise due diligence in inspecting the property under the terms of the purchase and sale agreement's feasibility provision, and despite the O'Neil Defendants' disclosures regarding damage from beach movements and a prior application for a bulkhead, Plaintiff still failed to properly investigate the property. Dkt. 51-2 at 27–28, 36–37. That the information was readily available by even the slightest investigation is shown by the ease with which Plaintiff received the information upon its trustee's untimely trip to the city records office. *See id.* at 38–47. Rational minds could not differ in determining that the O'Neil Defendants disclosed the potential encumbrances that fomented this lawsuit and that Plaintiff failed to exercise due diligence after receiving the disclosure. Even if the information in the MLS listing or real estate blog could be construed as misrepresentations, Plaintiff cannot show that it acted

reasonably or had a right to rely on the statements therein when making the decision to purchase the property. Therefore, the Court concludes that this serves as an additional basis for granting the O'Neil Defendants' motion for summary judgment.

### c. Subject Matter Jurisdiction

The O'Neil Defendants also move for summary judgment on the basis that the amount in controversy is insufficient to confer diversity subject matter jurisdiction. Dkt. 51 at 19–20. District courts have original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ." 28 U.S.C. § 1332. The diversity of the parties is conceded.

"In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Plaintiff claims damages and seeks rescission of a purchase agreement between itself and the O'Neil Defendants. "In actions for rescission, Courts have used the value of the object of the contract as the value of the rescission claim for the amount-in-controversy determination." *Diaz v. Carmax Auto Superstores California*, LLC, 1:15-CV-00523-AWI, 2015 WL 3756369, at *3 (E.D. Cal. June 16, 2015), *report and recommendation adopted*, 1:15-CV-00523-AWI, 2015 WL 4138995 (E.D. Cal. July 8, 2015) (citing *Garcia v. Citibank, N.A.*, No. 2:09–cv–03387–JAM–DAD, 2010 WL 1658569, at *2 (E.D. Cal. Apr. 23, 2010); *Rosen v. Chrysler Corp.*, 205

F.3d 918, 921 (6th Cir. 2000)).[2] In this case, the Court agrees with that approach. The total price of the property under the purchase agreement was $150,000, of which $30,000 would be offered in down payment while the O'Neil Defendants would receive $1,017.13 monthly payments on the remaining $120,000 under a 6 percent annual interest rate. If the contract is rescinded, the value of relief would be at least $150,000. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff has established that the object of the litigation satisfies the requisite amount in controversy.

### d.     Standing and Real Party in Interest

The O'Neil Defendants also move for summary judgment on the basis that Plaintiff lacks standing to bring this action because, as a trust, it is not the real party in interest. Their argument blurs the distinction between the real party in interest requirement and the constitutional standing requirement, which are distinct doctrines. *See* Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.).

Despite listing the Article III standing requirements, the O'Neil Defendants fail to offer any substantive discussion on how those requirements are not satisfied by Plaintiff's allegations. The Court finds that the standing elements of particularized injury, causal connection, and likelihood of redress by a favorable decision are all adequately established. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The fact that the

---

[2] Notably, the Ninth Circuit has not yet expressly adopted this view of the amount in controversy when dealing with rescission claims. *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (citing *Rosen*, 205 F.3d at 921; *Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 142 (9th Cir. 1975)) ("We need not decide whether to endorse this view, though, because even using the full contract price as the amount in controversy, we conclude that Kuxhausen's original complaint was not removable on its face.").

Plaintiff trust itself is not the real party in interest does not mean that the standing

elements are not established.

As for the fact that Plaintiff, as a trust, is not the real party in interest, the Court

agrees. However, this alone cannot be dispositive of the case. As stated in the Federal

Rules of Civil Procedure:

> The court may not dismiss an action for failure to prosecute in the name of
> the real party in interest until, after an objection, a reasonable time has been
> allowed for the real party in interest to ratify, join, or be substituted into the
> action. After ratification, joinder, or substitution, the action proceeds as if it
> had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). This is the first time that an objection has been raised that

Plaintiff is not the real party in interest. Additionally, Plaintiff has already moved to

amend the complaint in order to substitute the trust for the trustee. Dkt. 49. Defendants

have made no argument regarding the statute of limitations, relation back, or the

statement in Rule 17 that the action should proceed as if originally commenced by the

real party in interest after a substitution is made. Accordingly, the Court denies the

O'Neil Defendants' motion for summary judgment to the extent that it argues lack of

standing or a violation of the real party in interest rule.

### 3. Summary Judgment by Broker Defendants

The Broker Defendants move for summary judgment on Plaintiff's claims of

negligent misrepresentation, fraud, and breach of fiduciary duty. Dkt. 32. The Broker

Defendants argue that they are entitled to summary judgment because (1) Plaintiff cannot

show that it acted reasonably in relying, or had a right to rely, upon the allegedly false

representations and (2) Plaintiff's breach of fiduciary duty claim has been abrogated by RCW 18.86.110.

### a.     Absence of Justifiable Reliance or Right to Rely

The Broker Defendants' argument on Plaintiff's negligent misrepresentation and fraud claims is identical to the argument made by the O'Neil Defendants. Dkt. 32 at 12–19. As discussed in relation to the O'Neil Defendants' motion for summary judgment, Plaintiff's fraud and negligent misrepresentation claims fail as a matter of law because the potential encumbrances of which Plaintiff complains were clearly disclosed in the form 17 disclosure statement and Plaintiff failed to exercise any level of diligence after receiving the disclosure. *See Austin*, 171 Wn. App. at 91 (affirming dismissal because "after receiving the Form 17, which indicated that two LIDs had been proposed along with their proposed LID numbers, Austin needed only to contact the City of Tacoma to inquire about the potential cost of the LIDs."). Therefore, for the same reasons discussed above, the Broker Defendants are similarly entitled to summary judgment on Plaintiff's claims for fraud and negligent misrepresentation.

### b.     Breach of Fiduciary or Statutory Duties

The Broker Defendants next argue that Plaintiff's breach of fiduciary duty claim fails as a matter of law because the claim was abrogated in 2013 by RCW 18.86.110.

A claim for breach of fiduciary duty is, for all practical purposes, simply a negligence claim premised on the breach of a legal duty that arises from a special fiduciary relationship under common law principles of agency. To prevail on such a claim, a plaintiff must show (1) the existence of a duty owed from a fiduciary to the

plaintiff, (2) breach of that duty, (3) resulting injury, and (4) proximate causation. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433–34 (2002).

In 1997, the Washington State legislature codified the obligations that real estate professionals owe to their clients. *See* RCW 18.86. *See also Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 31 n. 3 (1997) ("[T]he Legislature enacted comprehensive legislation which redefined the duties of real estate brokers"). Then, in 2013, the legislature enacted RCW 18.86.110, which states:

> The duties under this chapter are statutory duties and not fiduciary duties. *This chapter supersedes the fiduciary duties of an agent to a principal, under the common law*. The common law continues to apply to all the parties in all other respects.

RCW 18.86.110 (emphasis added). As a result of the statutory framework set out in RCW 18.86 *et seq.*, "[i]n place of common law fiduciary duties, the Washington State legislature has prescribed statutory duties that real estate brokers owe their clients." *Pence v. John L. Scott, Inc. BI*, C13-5837 RBL, 2013 WL 6096233, at *2 (W.D. Wash. Nov. 20, 2013). Therefore, the Court concludes that Plaintiff's claim for breach of fiduciary duties fails as a matter of law.[3]

## C. Motion for Leave to Amend

In response to the motion for summary judgment, Plaintiff has also moved for leave to file an amended complaint. Dkt. 49. Plaintiff explains that the reasons for

---

[3] To the extent that Plaintiff argues that his claim should be construed as a claim for breach of statutory duties, the Court finds that such a claim would also be subject to summary judgment. Because Plaintiff has moved for leave to amend, the Court's basis for this finding is explained in its analysis regarding the futility of amendment.

amendment include: (1) correcting the caption to reflect the real parties in interest, (2) changing the claims based on affirmative misrepresentation to instead state claims based on intentional omissions, and (3) rephrasing the breach of fiduciary duty claim as a claim for breach of statutory duties. *Id.* at 4–5. Additionally, not mentioned by Plaintiff in its brief, it also seeks to expand its breach of contract cause of action so that it asserts a claim against the Broker Defendants. *See* Dkt. 50. Defendants oppose the amendment. Dkts. 56, 60.

The O'Neil Defendants first oppose amendment on the basis that the proposed amended complaint was not properly submitted in accordance with the Court's local rules. Dkt. 60 at 7–8. As they point out, Plaintiff has failed to properly delineate how the proposed amended complaint is distinguishable from the original. *See* W.D. Wash. Local Rules LCR 15. However, the differences between the original complaint and the proposed amended complaint are so substantial and comprehensive that compliance with the Court's local rules on demarcation seems pointless, as it would require bracketing or highlighting almost the entire proposed complaint. The Court declines to refuse amendment on the basis that the proposed amended complaint was not properly demarcated and instead analyzes the merit of amendment pursuant to Federal Rule of Civil Procedure 15.

"Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires." *AmerisourceBergan Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (internal quotation marks omitted). In assessing the propriety of an amended complaint, courts consider the following factors: (1) undue delay; (2) bad faith or dilatory

motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey v. United States*, 481 F.2d 1187, 1190 (1973). The party opposing amendment bears the burden of showing why leave to amend should not be granted. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Balancing these factors, the Court concludes that Plaintiff's motion for leave to amend should be denied.

### 1.       Delay, Bad Faith, and Dilatory Motive

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "[t]he timing of the motion [for leave to amend], after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave." *Schlacter-Jones v. General Tel.*, 936 F.2d 435, 443 (9th Cir. 1991). Indeed, "[a] motion for leave to amend 'is not a vehicle to circumvent summary judgment.'" *Ennis v. Sigurdson*, 185 F.3d 866 (9th Cir. 1999) (quoting *Schlacter-Jones*, 936 F.2d at 443). Nonetheless, "delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186.

Defendants argue that undue delay weighs in favor of denying leave to amend because Plaintiff did not request leave until twenty-seven days after Defendants moved for summary judgment and six days after the motion had been fully briefed. *See* Dkts. 32, 43, 47, 49. Indeed, the timing of Plaintiff's request for leave to amend is conspicuously inopportune for Defendants and suggests that the proposed amendment is merely an

attempt to avoid summary judgment. This perception is further supported by the fact that the proposed complaint seeks to add an entirely new breach of contract claim against the Broker Defendants, even though the added claim would have been just as adequately supported by the facts alleged in the original complaint as it is by the allegations in the proposed amendment. *See* Dkt. 50 at 10–11.

Plaintiff nonetheless asserts that the amended complaint is necessary because "information has come to counsel's attention that requires an amendment of Plaintiff's original complaint." Dkt. 49 at 1. Specifically, Plaintiff states that it has come "to counsel's attention that . . . the original Complaint premised its causes of action on affirmative misrepresentations, when, in fact, the misrepresentations that form the basis of Plaintiff's Complaint are by way of intentional omission as opposed to affirmative statements." Dkt. 49 at 4. Plaintiff further states that such amendment is necessary for its complaint "to conform to proof as uncovered through the discovery process." *Id.*

Despite vaguely implying that the information that it relies upon to justify amendment is somehow new, Plaintiff fails to explain how any information supporting legal theories based on omissions, as opposed to affirmative false statements, was unavailable to it at the time of the original complaint. The only evidence that the Court can decipher from the parties' briefings as being recently discovered is the deposition of Simmons, which occurred on May 11, 2017. *See* Dkt. 46. However, while that deposition addressed some information that would be relevant to legal theories based on a failure to disclose known conditions of the property, Plaintiff has failed to articulate any reason why it previously lacked sufficient evidence or information to support the same theories

for the purpose of bringing them in its original complaint. In fact, the original complaint itself claimed an omission on the part of the Broker Defendants by asserting that they "failed to accurately disclose the condition of the Property." Dkt. 1 at 7.

Despite Plaintiff's attempt to cast its proposed amendment as an attempt to more accurately "conform to proof," there is nothing on the record to indicate that the proposed amendment is supported by recent discovery or information that was previously unavailable to Plaintiff. This fact, coupled with the timing of the motion for leave to amend, leads the Court to conclude that the factors of undue delay and bad faith or dilatory motive weigh against Plaintiff's motion for leave to amend.

## 2. Futility

The Court finds that it would be futile to amend the complaint to assert claims based on omissions, as opposed to affirmative statements. The complaint already indicates that the conditions that form the basis of its claims include the property's location in a flood zone and the fact that the property is partially beyond the shoreline. As the Court has discussed above, fraud and negligent misrepresentation claims encompass both affirmative false statements and material omissions. *See Van Dinter*, 157 Wn.2d at 333. Accordingly, the Court has already assessed Plaintiff's claims to the extent that they are based on alleged omissions and has found that Defendants are entitled to summary judgment on those claims as a matter of law.

Additionally the Court finds that it would be futile to amend the complaint to rephrase its professional negligence claim based on breach of "fiduciary duties" as a claim based on a violation of the Broker Defendants' "statutory duties." *See* Dkt. 43 at 6–

7. Plaintiff's professional negligence claim was set out in the original complaint as

follows:

> 7 .1 Plaintiff realleges and incorporates paragraphs 1.1 through 6.10 herein.
> 7.2 As an agent for Plaintiff, the Agent Defendants owed Plaintiff a fiduciary duty.
> 7.3 When the Agent Defendants materially misrepresented, or *failed to accurately disclose the condition of the Property*, they breached their fiduciary duties to Plaintiff.
> 7.4 As a direct and proximate result of the Agent Defendants' breach, Plaintiff was injured in an amount to be proven at trial.

Dkt. 1 at 7 (emphasis added). The original complaint's "failure to accurately disclose"

language coupled with a negligence claim based on breach of "fiduciary duties" that were

superseded by the now applicable "statutory duties" was sufficient to place the Broker

Defendants on notice that the basis of the claim is that they failed "[t]o disclose all

existing material facts known by the broker and not apparent or readily ascertainable to a

party." RCW 18.86.030(1)(d).

However, the statutory duty to disclose material facts extends only to conditions

that are not "apparent or readily ascertainable to a party." *Id.* As discussed above, the

record indisputably shows that: (1) the potential encumbrances of which Plaintiff

complains were in fact disclosed to him in the form 17 disclosure statement, Dkt. 33-2 at

4–5; and (2) under the terms of the purchase and sale agreement, "all representations and

information regarding the Property and the transaction are solely from the Seller or

Buyer, and not from any Broker," Dkt. 33-1 at 22. As demonstrated by Plaintiff's

eventual discovery of the conditions of which it now complains, these conditions were

recorded in the applicable public offices and were ascertainable with the slightest

exercise of diligence. Moreover, if Plaintiff were allowed to amend its complaint as proposed, it still has failed to allege (let alone cite to evidence on the record) that the allegedly undisclosed conditions were not apparent or readily ascertainable. Accordingly, even if Plaintiff were allowed to amend its complaint to state a claim based on a breach of the Broker Defendants' statutory duty of disclosure, such a claim would fail as a matter of law.

Plaintiff has also suggested that the Broker Defendants violated RCW 18.86.030(1)(a), which "imposes the duty of exercising reasonable skill and care," when Simmons "didn't advise [Plaintiff] about the significance of [the bulkhead or the property's history of erosion] or advise [Plaintiff] to consult with an experts [sic] or investigate the matter further." Dkt. 43 at 4, 6. However, the Court cannot find this theory or any factual allegations to suggest or support it in either the original or the proposed amended complaints. *See* Dkt. 1; Dkt. 50 at 4–12. "A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Miller v. European Film Enterprises, Inc.*, 117 F.3d 1425 (9th Cir. 1997) (quoting *American Timber & Trading v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982)). Nonetheless, for plaintiffs to argue a theory of recovery at summary judgment, it is "required either (1) to plead the . . . theory in their complaints, or (2) to make known during discovery their intention to pursue recovery on the . . . theory omitted from their complaints." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Plaintiff has failed to argue or cite any evidence to suggest that it placed Defendants on notice of this theory prior to summary judgment proceedings. Because this theory has surfaced for

the first time in Plaintiff's response to the Broker Defendants' summary judgment motion, it is not appropriate for the Court to consider it. Moreover, because neither this theory nor facts to support it appear anywhere in the proposed amended complaint, this theory would not be saved by amendment. *See* Dkt. 50 at 4–12

Finally, the Court also finds that it would be futile to allow Plaintiff to add a breach of contract claim against the Broker Defendants. Plaintiff's proposed amendment does not specify any aspect or provision of a contract that was allegedly breached by the Broker Defendants. Instead, the proposed amendment simply reasserts a professional negligence claim; namely, that the Broker Defendants failed to adequately inform Plaintiff of material aspects of the sale and that they placed the interests of the O'Neil Defendants above those of Plaintiff. Dkt. 1 at 10–11. As discussed above, Plaintiff is unable to show that the Broker Defendants made any affirmative misrepresentations or failed to disclose a condition that was not readily ascertainable.

Based on the foregoing, the Court concludes that the factor of futility weighs against Plaintiff's request for leave to file an amended complaint.

**3.     Prejudice**

To the extent that Plaintiff seeks to amend its complaint to reflect the real party in interest and to rephrase its professional negligence claim, the Court does not find that such amendments would be prejudicial to Defendants. Defendants have failed to show how they would be adversely affected by re-captioning the case to reflect the proper party. Additionally, while poorly drafted to refer to "fiduciary duties," the original complaint's "failure to accurately disclose" language, coupled with a professional

1  negligence claim based on breach of "fiduciary duties," adequately placed Broker

2  Defendants on notice that the basis of Plaintiff's claim was a breach of RCW

3  18.86.030(1)(d).

4        Nonetheless, the Court finds that Defendants would be unfairly prejudiced if the

5  Court granted Plaintiff leave to amend in order to (1) assert an entirely new breach of

6  contract claim against the Broker Defendants, or (2) recast the underlying allegations in

7  the lawsuit as misrepresentations other than the property's "dry lot size" or location in a

8  flood zone. *See, e.g.*, Dkt. 50 at 7–8 (raising additional theory of Defendants' failure to

9  disclose a history of erosion problems). *But see* Dkt. 33-2 at 4–5 (disclosing that property

10  suffered material damage from beach movements). As already discussed, Plaintiff waited

11  to amend its complaint until nearly a month after the Broker Defendants had filed their

12  motion for summary judgment and less than a month from the long-established discovery

13  deadline. Defendants have already spent considerable resources in conducting discovery,

14  including depositions, and defending this case based on the allegations presented in the

15  original complaint. The discovery deadline has already passed and the scheduled trial

16  date is just three months away. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194

17  F.3d 980, 983, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the

18  proceedings supports a district court's finding of prejudice from a delayed motion to

19  amend the complaint"); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139

20  (9th Cir. 1998) (affirming the denial of leave to amend where the motion was made "on

21  the eve of the discovery deadline").

22

Because a substantial part of Plaintiff's proposed amendment would be prejudicial to Defendants, the Court finds that this factor also weighs against leave to amend.

## IV.    ORDER

Therefore, it is hereby **ORDERED** as follows:

1.    The Broker Defendants' motion for summary judgment (Dkt. 32) is **GRANTED** and the claims against them are **DISMISSED**;

2.    The O'Neil Defendants' motion for summary judgment (Dkt. 51) is **GRANTED** and the claims against them for fraud and negligent misrepresentation are **DISMISSED**;[4]

3.    Plaintiff's motion to continue (Dkt. 36) is **DENIED**; and

4.    Plaintiff's motion for leave to amend (Dkt. 49) is **DENIED**.

Dated this 12th day of July, 2017.

BENJAMIN H. SETTLE
United States District Judge

---

[4] The Court notes that the O'Neil Defendants did not move for summary judgment on the merits of Plaintiff's breach of contract or unjust enrichment claims.